IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LAMONT O. DOUGLAS,**

       Plaintiff,

v.                                                 Civil Action No. **3:13CV028**

**HAROLD CLARKE,** *et al.*,

       Defendants.

## MEMORANDUM OPINION

Lamont O. Douglas, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983[1] arguing that Defendants[2] violated his First[3] and Fourteenth[4] Amendment rights.  In his Complaint (ECF No. 1), Douglas argues entitlement to relief on the following grounds:

    Claim One:    Defendants violated his right to due process when Defendants refused to permit him to possess prayer oil in segregation.

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Defendants are Harold Clarke, Eddie Pearson, J. Boone, and R. Wallace ("Defendants").

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

Claim Two:   Defendants violated his First Amendment right to free exercise when they refused to allow him prayer oil in segregation.

Claim Three:   Defendants denied him access to the courts by denying him a postage loan to mail a notice of tort claim by certified mail to the Division of Risk Management.

Douglas requests injunctive, declaratory, and monetary relief. Defendants have moved for summary judgment. (ECF No. 22.) Douglas has responded. (ECF Nos. 25–26.) This matter is ripe for judgment. For the reasons stated below, Defendants' Motion for Summary Judgment will be GRANTED.

## I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a

2

mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit: (1) the affidavit of Eddie Pearson, the former Warden of Sussex I State Prison ("Sussex") (Mem. Supp. Mot. Summ. J. Ex I ("Pearson Aff."), ECF No. 23–1); (2) a copy of Virginia Department of Corrections ("VDOC") Operating Procedure § 861.3, Special Housing (*id.* Encl. A), and VDOC Operating Procedure § 802.1, Offender Property (*id.* Encl. B); (3) the affidavit of J. Boone, the Assistant Warden at Sussex (*id.* Ex. II ("Boone Aff"), ECF No. 23–3); (4) the affidavit of R. Wallace, a former Housing Unit Manager at Sussex (*id.* Ex. III ("Wallace Aff."), ECF No. 23–4); (5) the affidavit of Harold Clarke, the Director of the VDOC (*id.* Ex. IV ("Clarke Aff."), ECF No. 23–5); (6) the affidavit of P. Spivey, the Business Manager at Sussex (*id.* Ex. V ("Spivey Aff."), ECF No. 23–6); and (7) a copy of VDOC Operating Procedure § 803.1, Offender Correspondence (*id.* Encl. A).

Douglas filed an unsworn Memorandum in Support of Plaintiff's Opposition of Defendants Summary Judgment Motion and a sworn "Affidavit of Truth" ("Douglas Aff.," ECF No. 26–1), however, he stated as follows: "I Lamont O. Douglas state that I am the affiant in

this affidavit and know the contents of the above facts, that they are true of my own knowledge except as to those matters that are stated to be based on belief and information, and as to those matters, I believe them to be true." (Douglas Aff. 5.) Douglas provided a similar statement in his Complaint. (Compl. 9.) Such a statement fails to transform the allegations in the affidavit or Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "'mere pleading allegations'" (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2011))). Douglas's Complaint and affidavit also contain legal conclusions and matters upon which Douglas has no personal knowledge, and fails to comply with Federal Rule of Civil Procedure 56(c)(4).[5] While it is doubtful that Douglas's submissions constitute admissible evidence, the Court nevertheless, considers both the Complaint and the Affidavit of Truth in assessing the propriety of entering summary judgment.

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Douglas.

## II.   UNDISPUTED FACTS

### A.   Prayer Oil

Douglas was confined in segregation in Sussex from January 5, 2012 through May 23, 2013 and again after February 20, 2014. (Pearson Aff. ¶ 4.) Douglas is currently, and was previously, housed at Red Onion State Prison. (*Id.*) VDOC Operating Procedure § 861.3 sets forth minimum standards for operation of special housing units, and minimum standards for the care and custody of offenders assigned to these units, including segregation. (*Id.* ¶ 5.)

---

[5] For example, Douglas states that "I believe the defendant(s) are targeting the Muslim faith as terrorist. As well as those who use prayer oil in ways the defendant(s) don't understand or are not open to accept." (Douglas Aff. ¶ 14.)

of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases).[13] Douglas claims that Defendants denied him property that he wished to purchase, in the form of prayer oil, without due process of law. Douglas wholly fails to demonstrate that, following his lawful incarceration, he has a protected property interest in purchasing prayer oil. *Cf. Steffey v. Orman*, 461 F.3d 1218, 1221–23 (10th Cir. 2006) (no property interest in contraband); *Bagley v. Lanham*, No. 94–6025, 1994 WL 200718, *1 (4th Cir. May 23, 1994) (same); *Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) (explaining that "[b]ecause the property was contraband, [inmate] cannot seriously argue that he had a protected property interest in it"). Douglas's claim is frivolous and Defendants' Motion for Summary Judgment will be GRANTED with respect to Claim One.

## V. FREE EXERCISE

In order for Douglas to survive summary judgment for his First Amendment claim, Douglas must demonstrate Defendants' policy substantially burdens his religious exercise. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *5 (E.D. Va. Nov. 18, 2011). Even if Douglas demonstrates that Defendants' policy substantially burdened his religious exercise, the policy passes constitutional muster if it was rationally related "to legitimate penological interests." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

---

[13] To the extent Douglas intends to raise a Fourteenth Amendment equal protection challenge to the denial of prayer oil, Douglas fails to make the threshold showing for an equal protection claim. Douglas fails to allege, as he must, that similarly situated inmates are allowed prayer oil, and that the unequal treatment resulted from purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Thus, any equal protection challenge to the denial of prayer oil will be DISMISSED.

A prison regulation is reasonable and thus permissible if it satisfies the four factors established in *Turner v. Safley*, 482 U.S. 78 (1987). That test asks: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (parallel citation omitted) (quoting *Lovelace v. Lee*, 472 F.3d 174, 200 (2006)). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132 (citations omitted).

First, it is doubtful that Douglas has demonstrated that possessing prayer oil was a religious practice mandated by his faith. Defendants, however, raise no challenge to this aspect of his free exercise claim. Even assuming Douglas's faith required the possession of prayer oil, Sussex's policy of refusing to allow inmates in segregation to have prayer oil easily passes the above test. As explained by Defendants Pearson and Wallace, the policy furthers prison security and officer safety with the management of segregation offenders. Thus, the first *Turner* factor clearly favors Defendants. Second, Douglas retains a host of methods of practicing his faith as he describes in his complaint. Douglas can pray, do yoga, meditate, and engage in other practices relevant to his faith. Thus, the second factor also favors Defendants. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987) ("We think this ability on the part of respondents to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable."). Third, Douglas's desire to possess prayer oil in segregation would have an obviously significant impact on prison resources. If segregation offenders could possess prayer oil, offenders could create an unsafe and dangerous environment

11

for staff working in and other offenders housed in segregation areas, as offenders did in the past when prayer oils were permitted in segregation. Certainly, this would require increased security requirements. Finally, Douglas fails to identify any obvious, easy alternatives to Defendants' policy. Thus, Defendants' policy passes muster under the *Turner* test. *See Hodgson v. Fabian*, 378 F. App'x 592, 593 (8th Cir. 2010) (holding proffered "evidence of multiple safety and security concerns supporting the policy" to ban prayer oil, established validity of policy); *Acoolla v. Angelone*, No. 7:01–CV–01008, 2006 WL 938731, at *10 (W.D. Va. Apr. 10, 2006) ("[d]eferring appropriately to the expert opinions of experienced prison officials" based on "evidence that segregation inmates have used oils in the past to frustrate officers in their efforts to restore order and that the only way to control the risk of such abuse in the future is to forbid segregation inmates from possessing bottles of oil in their cell").

In response, Douglas insists that the policy is an exaggerated response. In support of this argument, he states that he has never used prayer oil to make the floor slippery. (Douglas Aff. ¶ 15.)[14] Douglas also swears that segregation inmates can purchase ointment which has a slippery consistency. (*Id.* ¶ 5; Mem. Opp'n 3.) Nevertheless, prison officials need not wait for a particular disruption to occur before they can take reasonable measures to abate it, especially when, as here, the measure addresses a disruption that Defendants aver actually occurred in the past. *See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 470 (4th Cir. 1999). Rather, the Supreme Court has admonished that "[w]hen confronted with a threat to order, '[r]esponsible prison officials must be permitted to

---

[14] Despite Douglas's claims that he has caused no disruption, the Court notes that the United States District Court for the Western District of Virginia convicted Douglas in 2003 for attacking a correctional officer as prisoners left their cells to pick up lunch trays. *See Douglas* v. *Meade*, No. 2:01CV70327, 2003 WL 1873278, at *1 (W.D. Va. Apr. 10, 2003). Douglas "stabbed [the officer] seven times with a metal 'shank' or home-made knife." *Id.*

prison officials must be permitted to take reasonable steps to forestall such a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot.'" *Id.* (second alteration in original) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132–33 (1977)). Considering the factors discussed above, Douglas fails to demonstrate that the prohibition on prayer oil in segregation is not rationally related to the legitimate penological interest of security. Thus, Douglas fails to demonstrate that the policy banning prayer oil to segregation inmates violates the Constitution. Accordingly, Claim Two will be DISMISSED.

## VI.   DENIAL OF ACCESS TO THE COURTS

In Claim Three, Douglas argues that Defendants denied him a postage loan for certified mail which denied him access to the courts. In order to establish a case of denial of access to the courts, a plaintiff must identify with specificity an actual injury to non-frivolous litigation. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "This requires the inmate to come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions." *McCoy v. Clarke*, No. 3:11CV731, 2013 WL 4749912, at *2 (E.D. Va. Sept. 3, 2013) (citations omitted) (internal quotation marks and alteration omitted).

Douglas proffers no evidence of an actual injury to non-frivolous litigation. The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Douglas sought to file a tort claim to the Virginia Division of Risk Management complaining about the ban on prayer oil in segregation. At most, Douglas states that he attempted to file a notice of tort claim "to enforce my right to worship my creator with prayer oil." (Compl. ¶ 14.) Douglas fails to describe "the predicate claim . . . well enough to apply the 'non-frivolous' test

and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 416 (footnote omitted).

Furthermore, Douglas fails to demonstrate "actual injury" from Defendants' conduct. Douglas vaguely explains that Defendants would not provide him with a loan for certified mail postage when he wanted to mail a tort claim to the Virginia Division of Risk Management. (Compl. ¶¶ 14–15.)  However, the record demonstrates that Douglas did not need to file his tort claim by certified mail, but could have mailed the claim by first class mail. (Spivey Aff. ¶ 4.) Thus, Douglas fails to explain how Defendants' actions violated his constitutional rights. *Cf. Ladeairous v. Pearson*, No. 3:12CV307, 2013 WL 5962932, at *2 (E.D. Va. Nov. 6, 2013) (finding no denial of access to courts when inmate's misconception about requisites of filing, not prison policy, prevented him from filing action).   Moreover, he fails to explain how, once Douglas learned that he could mail his notice by first-class mail, Defendants prevented him from doing so.  Thus, Douglas fails to demonstrate that Defendants denied him meaningful access to the courts. Accordingly, Claim Three will be DISMISSED.

## VII.   CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 22) will be GRANTED.   The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/ _____

John A. Gibney, Jr.
United States District Judge

Date: 2/27/15
Richmond, Virginia

14